UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
ATHANASIOS DINIS,

                              Plaintiff,

                    -against-

NEW YORK CITY DEP'T. OF EDUC., *et al.*,

                            Defendants.
--------------------------------------------------------------------X

**REPORT &
RECOMMENDATION**

**22-cv-7741 (VEC) (JW)**

**To the Honorable Valerie E. Caproni, United States District Judge:**

On March 16, 2023, this action was referred for a Report and Recommendation on dispositive motions, including the instant motion to dismiss. Dkt. No. 19. *Pro se* Plaintiff Athanasios Dinis alleges racial discrimination in violation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Executive Law §§ 290, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-101, *et seq.* ("NYCHRL"), including claims of hostile work environment, retaliation, and failure to promote. Dkt. No. 1 (the "Complaint" or "Compl."). On March 15, 2023, Defendants New York City Department of Education ("NYCDOE") and principal Christina Koza ("Koza") of the Spring Creek Community School filed the instant motion to dismiss, Dkt. No. 15 (the "Motion"), as well as a memorandum of law in support of their motion, Dkt. No. 17 ("Def. Memo"), and a Declaration from counsel Traci Krasne, Dkt. No. 16 ("Krasne Decl.").

On April 28, 2023, Plaintiff filed his memorandum of law in opposition to Defendants' Motion, Dkt. No. 23 ("Opp."), and a supporting affidavit from Plaintiff,

Dkt. No. 22 ("Pl. Decl.").  On May 12, 2023, Defendants filed a reply in further support of their Motion.  Dkt. No. 24 ("Reply").   On January 12, 2024, Plaintiff filed a letter asking the Court to consider subsequent allegations of discrimination, or in the alternative, seeking leave to amend his complaint.  Dkt. No. 25 ("Sur-reply").

For the reasons stated below, this Court recommends that Defendant's Motion to dismiss be GRANTED in part and DENIED in part.

## BACKGROUND[1]

Plaintiff, who identifies as Caucasian/white, is employed by Defendant NYCDOE as a social studies teacher.  Compl. ¶ 1. [2]  Plaintiff has been a teacher with NYCDOE for over 17 years.  Id.  Since September 2019, Plaintiff has worked at the Spring Creek Community School in Brooklyn, where Defendant Koza is the principal. Id. ¶ 2.  The school has had various assistant principals ("APs") including APs Hammer, Huxtable, and Rousseau.  Id. ¶¶ 5, 8, 9.  Plaintiff also identifies two paraprofessionals who worked at the school, Mr. Registe and Ms. Theodore, both of whom Plaintiff alleges are Black.  Id. ¶ 5.

During the 2019-2020 school year, Plaintiff was assigned to the SAVE room and worked as a dean.  Compl. ¶ 3. [3]  During the 2020-2021 school year, Plaintiff was employed as a full-time dean and received a rating of "satisfactory" at the end of the

---

[1] The following facts are taken from Plaintiff's Complaint and presumed true for the purposes of this motion to dismiss.  See Meyer v. JinkoSolar Holdings Co., Ltd., 761 F.3d 245, 247 (2d Cir.2014).

[2] Paragraph references in the Complaint refer to those enumerated in the addendum on pp. 9-17. Page number references refer to those generated by ECF, where applicable.

[3] This Court notes that the Complaint does not define "SAVE" room, nor does it provide a job description of the positions at issue i.e., "SAVE room teacher," "logistics dean," "central dean," etc. See generally Compl.

year.  Id. ¶ 4.  Plaintiff's claims of racial discrimination, hostile work environment, and retaliation stem from incidents dating back to around April 2021.  Id. ¶ 5. Plaintiff alleges he filed dual charges with the New York State Division of Human Rights ("NYSDHR") and the U.S. Equal Employment Opportunity Commission ("EEOC") on October 27, 2021, and November 19, 2021.  Id. at 6, 19-40.[4]  The October 27, 2021 NYSDHR charge alleges racial discrimination, harassment, demotion, and a negative performance review.  Id. at 20-21.  The November 19, 2021 NYSDHR charge includes a claim for retaliation.  Id. at 31.  The EEOC notified Plaintiff of his right to sue on June 14, 2022, id. at 18, and Plaintiff filed the Complaint on September 9, 2022, id. at 7.

**Allegations of Discrimination**

Plaintiff states that on April 26, 2021, Plaintiff was addressing a female student about being out of uniform when a paraprofessional Ms. Theodore, "interrupted" and "incorrectly [told] the student she could wear beige pants."  Compl. ¶ 5.  Plaintiff then alleges Theodore told AP Hammer that she wished "Mr. R." (who this Court assumes to be Mr. Registe) was the dean.  Id.

A few days later, on April 28, 2021, AP Hammer asked Plaintiff to assist two teachers with bringing laptop carts from the third floor to the first floor.  Compl. ¶ 6. Plaintiff states that he waived to Mr. Registe and Ms. Theodore to notify them of safety issues and unsupervised students.  Id.  However, Mr. Registe thought Plaintiff

---

[4] The Court notes that only the NYSDHR charges (rather than the EEOC charges) have been submitted as attachments to the Complaint.

snapped his fingers at them, Mr. Registe then "embarrassed and threatened [Plaintiff] publicly in front of other teachers and students." Id. Plaintiff reported this to Defendant Koza and AP Hammer and requested a meeting with union ("UFT") representation present ("April 28 Email"). Id. On April 30, 2021, Plaintiff had a meeting with Defendant Koza and AP Hammer where he was denied UFT representation, and conveyed that he felt unsafe and unsupported by the administration. Id. ¶ 7.

Later, on May 3, 2021, during a virtual professional development meeting, Ms. Diamond, a teacher who Plaintiff identifies as Black, typed in a virtual chat that Plaintiff was a "white prison warden" "perpetuating the prison system and trying to control [the] students by forcing them in the classroom." Compl. ¶ 8. Plaintiff alleges AP Rousseau attended the virtual meeting, but ignored the remarks in the chat. Id. Plaintiff told AP Hammer about the remark, and AP Hammer said that someone from the administration would speak to Ms. Diamond about it. Id.

On May 5, 2021, Plaintiff had a meeting with Defendant Koza, APs Hammer and Hutxable regarding his April 28 Email. Compl. ¶ 9. At the meeting, Defendant Koza stated that she reviewed the video, and it did seem like Plaintiff snapped his fingers at Mr. Registe. Id. Defendant Koza further accused Plaintiff of using "aggressive and racially prejudicial language" in the April 28 Email where Plaintiff said he felt threatened by Mr. Registe's tone. Id. Plaintiff also claims that Defendant Koza threatened to end the meeting early or fire/reassign Plaintiff when he did not agree with her feedback. Id. Plaintiff alleges he spoke with a school safety officer

who told him that the administration did not know how to use the video surveillance system and did not request to review any footage of the incident between Plaintiff and Mr. Registe. Id. ¶ 10. Subsequently, Plaintiff asked the safety officer if he could view the footage of the April 28 incident and Plaintiff recorded it on his cellphone. Id. ¶ 16. Plaintiff claims Defendant Koza demanded he turn over his phone and delete the video, but Plaintiff refused. Id. ¶ 17.

On June 17, 2021, Plaintiff interviewed for the two 2021-2022 school year "central [co-]dean" positions. Compl. ¶ 13. Plaintiff alleges he met all of the qualifications in the posting and was asked questions about race "since the school is predominantly made up of [B]lack students and staff[,]" but other applicants were not asked the same set of questions. Id. Ultimately, two candidates, both of whom Plaintiff identifies as Black, were chosen for the central co-dean positions. Id. ¶ 14. Plaintiff alleges he had seniority over both applicants chosen for the 2021-2022 co-dean positions. Id. Plaintiff's opposition papers contend that neither applicant selected for the position had been a full time dean before, and Plaintiff had six years of seniority while one applicant selected only had 4 years of seniority. Opp. at 23. [5] Following the denial of the central co-dean positions, Plaintiff was tentatively offered a full-time position of logistics dean pending budget approval. Compl. ¶ 14.

---

[5] Defendants argue that Plaintiff should not be permitted to amend his complaint in his opposition papers. However, "it is appropriate to consider factual allegations made in a *pro se* plaintiff's opposition papers on a motion to dismiss, so long as the allegations are consistent with the complaint." Mil'chamot v. New York City Hous. Auth., No. 15 CIV. 108 (PAE), 2016 WL 659108, at *1 n.1 (S.D.N.Y. Feb. 16, 2016).

On June 25, 2021, Plaintiff filed a complaint with the UFT regarding Defendant Koza's alleged discriminatory behavior toward him. Compl. ¶ 18. On July 21, 2021, Defendant Koza emailed Plaintiff that she did not get budget approval for the full-time dean position, so Plaintiff would instead be the "[SAVE] room teacher" for the 2021-2022 school year. Id. ¶ 19.

Plaintiff returned to school on September 9, 2021, and alleges he was given a notice letter to meet with Defendant Koza about allegations of insubordination and professional misconduct. Compl. ¶ 20. Plaintiff was called into a disciplinary meeting on September 22, 2021, with Defendant Koza, AP Huxtable, and AP Rousseau. Id. ¶ 21. Plaintiff states that during the September 22 meeting Defendant Koza again accused him of "using aggressive and prejudicial language towards the paraprofessionals" in the April 28 Email. Id.

On October 5, 2021, Plaintiff alleges the school custodian told him Defendant Koza said "you do not want trouble with the [B]lack community[.]" Compl. ¶ 22. On October 21, 2021, Plaintiff had a meeting with APs Huxtable and Rousseau who informed him that there was a program change and Plaintiff was assigned to classes "not listed on his preference sheet… plac[ing him] at a huge disadvantage." Id. ¶ 23.

On October 26, 2021, Plaintiff had a step 1 reorganization grievance hearing, where Defendant Koza stated all applicants for the 2021-2022 central co-dean positions were asked the same set of questions, with the exception that the questions were adjusted for someone who had held the dean role before. Compl. ¶ 24. On

6

October 27, 2021, Plaintiff filed his first NYSDHR complaint, which he sent to Defendant Koza the next day. Id. ¶ 25.

On November 3, 2021, Plaintiff received the first ever disciplinary letter in his file dated November 1, 2021 (the "Disciplinary Letter"), in which Defendant Koza accused Plaintiff of professional misconduct. Compl. ¶ 26. Plaintiff believes the Disciplinary Letter was retaliation for his UFT grievance and NYSDHR complaint. Id. ¶ 27. On November 23, 2021, Defendant Koza denied a step 1 grievance to remove the Disciplinary Letter from Plaintiff's file. Id. ¶ 30.

On November 17, 2021, Plaintiff exited a virtual staff meeting and received an email from Defendant Koza about his attendance telling him not to leave early. Compl. ¶ 28. Plaintiff alleges on December 1, 2021, he observed Mr. Cole, who he identifies as Black, leave a virtual staff meeting early. Id. Plaintiff spoke to Mr. Cole a few days later, and he said no member of the administration emailed or spoke to him about leaving early. Id.

On January 18, 2022, Defendant Koza reportedly told Plaintiff that he lacked "racial and cultural competencies" and that is why she rescinded the offers and denied the deans' positions. Compl. ¶ 31. A few days later, on January 20, 2022, Plaintiff had an informal class observation ("Class Observation") and subsequently received a "threatening email" from Defendant Koza related to students' alleged non-academic use of cell phones in the SAVE room. Id. ¶ 32. Plaintiff alleges students told him Defendant Koza did not say anything to another teacher, who Plaintiff identifies as Black, when a student was on a cell phone in her class. Id.

On January 25, 2022, Plaintiff had another schedule change due in part to teacher resignations and was told that he would be removed from the SAVE room and receive two additional classes for the next semester beginning February 2. Compl. ¶ 34. On February 3, 2022, Plaintiff attended a virtual step 2 reorganization hearing regarding the schedule change with his UFT representative and deputy superintendent. Id. ¶ 37. The deputy superintendent denied Plaintiff's grievance regarding the schedule change on February 8, 2022. Id. Plaintiff took a restoration of health leave from February 2 to June 17, 2022, citing the stress of the "harassment, embarrassment, and retaliation by [the] administration." Id.

On March 11, 2022, Plaintiff received mostly negative feedback about his Classroom Observation, and he filed a complaint the same day. Compl. ¶ 38. Defendant Koza said she would not schedule a grievance meeting to address the issue while Plaintiff was on leave. Id. ¶ 41.

On May 25, 2022, Plaintiff applied for the central co-dean positions for the 2022-2023 school year and alleges he met the qualifications per the posting. Compl. ¶ 43. On June 14, 2022, while on leave, Plaintiff interviewed for the dean positions with Defendant Koza and APs Hammer and Huxtable. Id. Plaintiff returned to work on June 21, 2022 after being evaluated by his doctor, but was absent on June 24th and 27th "as [he] did not feel well and [his] symptoms relapsed with the principal's continued retaliation and harassment." Id. ¶ 45. Plaintiff alleges Defendant Koza sent "threatening" emails scheduling a disciplinary conference and questioning his

use of vacation days to cover his leave.  Id. ¶¶ 46-47.  On June 27, 2022, Plaintiff received a tentative teaching schedule for the 2022-2023 academic year.  Id. ¶ 48.

On June 28, 2022, Plaintiff attended a virtual disciplinary conference with Defendant Koza and his UFT representative where he was accused of insubordination and professional misconduct.  Compl. ¶ 49. Subsequently, Plaintiff found out Defendant Koza selected the same two candidates, who Plaintiff identifies as Black, for the central co-dean positions.  Id.  Plaintiff filed another grievance.  Id.

Plaintiff alleges that as a result of the "embarrassment, discrimination, retaliation, harassment, demotion, and hostile work environment [,]" he developed "symptoms of depression, generalized anxiety disorder, anger, disturbed sleep rhythm, and post-traumatic stress disorder." Compl. ¶ 52.  Plaintiff further argues the incidents affected his work culminating with his restorative health leave, and he attended weekly therapy sessions and began taking medication.  Id.

## LEGAL STANDARD

"Under Ashcroft v. Iqbal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face' to survive a motion to dismiss." Nielsen v. AECOM Tech. Corp., 762 F.3d 214, 218 (2d Cir.2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "At this stage, dismissal is appropriate only where [Plaintiff] can prove no set of facts consistent with the complaint that would entitle [him] to relief." Meyer, 761 F.3d at 249.

As a general matter, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments

that they *suggest*." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quotations omitted). "[T]o survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." Bodley v. Clark, 11 Civ. 8955 (KBF), 2012 WL 3042175, at *2 (S.D.N.Y. July 23, 2012).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," Daniel v. T&M Prot. Res., Inc., 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012)). "[B]ecause a *pro se* plaintiff's allegations must be construed liberally, it is appropriate to consider factual allegations made in a *pro se* plaintiff's opposition papers on a motion to dismiss, so long as the allegations are consistent with the complaint." Mil'chamot v. New York City Hous. Auth., No. 15 CIV. 108 (PAE), 2016 WL 659108, at *1 n.1 (S.D.N.Y. Feb. 16, 2016). However, "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting another source).

## DISCUSSION

### A. Defendants' Motion to Strike Sur-reply

Plaintiff filed a Sur-reply asking this Court to consider new allegations in reviewing the instant Motion to dismiss. Dkt. No. 25. Defendants ask that this Court decline to consider the Sur-reply and strike it from the docket. Dkt. No. 26.

Per this Court's Individual Practices Section II(B), "[s]ur-reply memoranda will not be accepted without prior permission of the Court." This Court did not grant Plaintiff leave to file a Sur-reply. Therefore, this Court did not consider the submission in reaching the Recommendation herein. However, this Court declines to exercise its discretion to strike the Sur-reply from the docket. **Defendants' motion at Dkt. No. 26 is GRANTED in part and the Clerk of the Court is respectfully requested to close the motion.**

### B. N.Y. Educ. Law § 3813

Defendants move to dismiss Plaintiff's NYSHRL and NYCHRL claims against Defendant NYCDOE alleging he failed to notify Defendant NYCDOE of his claims pursuant to N.Y. Educ. Law § 3813(1). Def. Memo at 19-20. Defendants also state that N.Y. Educ. Law § 3813 has a strict one-year statute of limitations and argue any claims accrued prior to September 22, 2021, should be dismissed as untimely because Plaintiff filed his complaint in this action on September 22, 2022. Id. at 20. In the alternative, Defendants argue that if the NYSDHR complaint satisfies the notice requirements of N.Y. Educ. Law § 3813(1), then notice was to be made within three months of accrual of any claims, so claims accrued before July 27, 2021, should be time-barred. Reply at 7. Conversely, Plaintiff alleges his NYSDHR/EEOC complaints satisfy the notice requirement of N.Y. Educ. Law § 3813(1). Opp. at 14-16. Plaintiff further argues that filing his EEOC/NYSDHR claim tolls the statute of limitations on his NYSHRL claims so any allegations of adverse action against him

11

are timely as they occurred before October 27, 2020 (a year before Plaintiff filed his first EEOC/NYSDHR complaints).  Opp. at 16.

### 1. § 3813(1) Notice

Defendants argue that the NYSDHR filing does not satisfy the notice requirement of N.Y. Educ. Law § 3813(1).  Reply at 6.  Defendants do however acknowledge that the Court has recognized that the "notice of claim requirements can be fulfilled through 'timely' filing of an EEOC complaint."  Id. (citing Walsh v. Scarsdale Union Free Sch. Dist., 375 F. Supp. 3d 467, 481 (S.D.N.Y. 2019)).  Defendants also concede that "an administrative filing with the [NY]SDHR may sometimes satisfy the notice of a claim."  Reply at 6.  In response, Plaintiff alleges he dually filed NYSDHR and EEOC complaints on October 27, 2021, Compl. at 6, Opp. at 15, and Defendant NYCDOE had ample notice of his claims in this action.  Opp. at 14-16.

"The purpose of [the § 3813(1)] notice of claim requirement is to provide prompt notice of claims so that an investigation may be made before it is too late for the investigation to be effective."  Donlon v. Bd. of Educ. of Greece Cent. Sch. Dist., No. 06-CV-6027T, 2007 WL 108470, at *2 (W.D.N.Y. Jan. 12, 2007).  Courts in this Circuit have found that an EEOC complaint satisfies the notice requirements of Section 3813(1) where "facts set forth in the EEOC charge contained a sufficient degree of descriptive detail to place the District on notice of plaintiff's [ ] discrimination and retaliation claims[.]"  Id. at *3.  Additionally, the Court has declined to dismiss employment discrimination claims finding that § 3813 "does not require a formal

notice of claim but instead requires that the claims must have been presented to the district or school within three months after the accrual of such claim[,]" and timely filed EEOC charges outlining the allegations of discrimination have satisfied this requirement. Walsh, 375 F. Supp. 3d at 481.

Here, Plaintiff alleges dual filing of the EEOC and NYSDHR claims on October 27, 2021, Opp. at 15, Compl. at 6. Defendants' papers do not argue that Plaintiff did not timely file an EEOC complaint. See Def. Memo, Reply. Further, Defendants concede that "timely" filing of an EEOC claim can constitute sufficient notice, Reply at 6, and Plaintiff's EEOC claim was timely filed. "[T]he statute of limitations for filing a charge of discrimination with the EEOC is 300 days." Johnson v. Trustees of Columbia Univ. In City of New York, No. 00 CIV.8118 (WK) (RLE), 2003 WL 2013371, at *2 (S.D.N.Y. Apr. 25, 2003), report and recommendation adopted sub nom. Johnson v. City Univ. of New York, No. 00CV8118(WK)(RLE), 2003 WL 21433455 (S.D.N.Y. June 16, 2003). In the instant action, the earliest date cited in the Complaint alleging discrimination is April 2021, Compl. ¶ 5, well within 300 days of October 27, 2021 when the first EEOC claim was filed, Compl. at 6. This Court agrees with Plaintiff that an EEOC charge filed on October 27, 2021, is sufficient to satisfy the notice requirement of § 3813(1).

Additionally, based on this Court's review of the NYSDHR charge dated October 27, 2021, Compl. at 19-29, it provided Defendant NYCDOE with notice of the racial discrimination allegations at issue in this action. The NYSDHR charge includes an addendum similar to the addendum filed with the Complaint alleging

13

virtually identical incidents of discrimination.  Compl. at 9-12, 26-29.  Defendant Koza was sent a copy of the NYSDHR charge the day after it was filed.  Compl.  ¶ 25. Further, the November 19, 2021 NYSDHR charge put the Defendants on notice of the retaliation claims.  Compl. at 2. In this Court's view the NYSDHR charge satisfies the notice requirement of § 3813(1).

Defendants argue that even if the October 27, 2021 charges provided notice, claims after July 27, 2021 should be barred because the notice was to be made within three months of accrual of any claims.  Reply at 7.  Here, where the EEOC complaint was timely, the Court finds no prejudice to the municipality as Defendant NYCDOE acquired timely knowledge of the case.  Walsh, 375 F. Supp. 3d at 481.  The statutory period under § 3813 (2-b) is one year, and all of the claims in the October 27, 2021 NYSDHR charges occurred within the statutory period.  Further, Plaintiff filed a grievance with his union on June 25, 2021 (within three months of the first allegation of discrimination).  Compl. ¶ 18.  Therefore, in this Court's view, Defendant NYCDOE had sufficient notice of the claims at issue in this litigation.

Assuming *arguendo* that the District Judge disagrees that the NYSDHR/EEOC claims satisfy the notice requirement, pursuant to N.Y. Educ. Law § 3813 (2-a), the Court may "extend the time to serve a notice of claim . . . not [to] exceed the time limit for the commencement of an action by the claimant against any district or any such school."  "In determining whether to grant the extension, the court shall consider, in particular, whether the district or school . . . acquired actual knowledge of the essential facts constituting the claim within the time specified in

14

subdivision one of this section or within a reasonable time thereafter." Id. Here, as detailed previously, the NYSDHR provided Defendants with ample notice of the allegations in the Complaint. Plaintiff alleges Defendant NYCDOE replied to the NYSDHR complaint on or about January 28, 2022, Opp. at 15, providing further support that they had notice of the claims at issue in this action.

Therefore, this Court recommends that Defendants' Motion to dismiss for lack of N.Y. Educ. Law § 3813(1) notice be DENIED.

### 2. Timeliness

Defendants further argue that claims against NYCDOE are not subject to tolling and "must instead comply with the strict one-year statute of limitations period set forth in New York Education Law § 3813." Reply at 7 (citing Guity v. Uniondale Union Free Sch. Dist., No. CV 15-5693(SJF)(AKT), 2017 WL 9485647 (E.D.N.Y. Feb. 23, 2017)). Conversely, Plaintiff contends that filing his EEOC/NYSDHR claims on October 27, 2021, tolled the statute of limitations on his NYSHRL claims against NYCDOE so actions occurring before October 27, 2020 are timely. Opp. at 16.

This Court agrees with Plaintiff. The Circuit has not yet decided whether the filing of an EEOC charge generally tolls the statute of limitations on related NYSHRL claims. Defendants rely on Guity, 2017 WL 9485647, at *10 to argue that such filing does not toll claims against school districts pursuant to § 3813. However, after Guity, in Langella v. Mahopac Cent. Sch. Dist., No. 18-CV-10023 (NSR), 2020 WL 2836760, at *16 (S.D.N.Y. May 31, 2020), the Court "join[ed] th[e] line of cases in concluding that the filing of an EEOC charge tolls the one-year statute of limitations for

15

NYSHRL claims against school districts." The Court in that case reasoned that it would make little sense "to treat [] filings differently just because the defendant in the matter is a school district." Id. Additionally, as Plaintiff cites, "the overwhelming weight of authority within the Circuit holds that the filing of a charge with the EEOC tolls the statute of limitations for any related claims under the NYSHRL[.]" Opp. at 23 (citing Kirkland-Hudson v. Mount Vernon City Sch. Dist., No. 21-CV-695 (KMK), 2023 WL 2691622, at *13 (S.D.N.Y. Mar. 29, 2023)).

In this Court's view, there is no reason to depart from the recent trend in this Circuit in holding that the filing of the EEOC charge tolls the statute of limitations. With this legal framework in mind, turning to the instant action, Plaintiff alleges he filed an EEOC charge on October 27, 2021. Compl. at 6.  The earliest conduct that Plaintiff points to in his complaint dates back to April 2021, so the claims are timely.

Therefore, this Court recommends that Defendants' Motion to dismiss based on alleged N.Y. Educ. Law § 3813 violations be DENIED.

### C. Title VII Claims Against Defendant Koza

Defendants argue there is no individual liability under Title VII so Title VII claims against Defendant Koza must be dismissed.  Def. Memo at 20. Plaintiff does not dispute that individually named defendants are not liable under Title VII.  Opp. at 17.  Title VII does not subject individual defendants to personal liability.  Guerra v. Jones, 421 F. App'x 15, 17 (2d Cir. 2011).

Therefore, this Court recommends the Title VII claims against Defendant Koza be dismissed and that portion of Defendants' Motion be GRANTED.

16

### D. **Other Employment Discrimination Claims**

Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), claims of employment discrimination are analyzed under a burden-shifting framework. To establish a *prima facie* case of discrimination, a plaintiff must show (1) the plaintiff is a member of a protected class, (2) the plaintiff was qualified for the position they held, (3) the plaintiff was subject to an adverse employment action, and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. See Ruiz v. County of Rockland, 609 F.3d 486, 491-92 (2d Cir. 2010) (standard for Title VII); Melman v. Montefiore Med. Ctr., 946 N.Y.S.2d 27, 30-31 (2012) (standard for NYCHRL); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (standard for NYSHRL). At the motion to dismiss stage, the *prima facie* requirements are "reduced" such that the complaint "need only give plausible support" to the elements. Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).

Defendants argue that Plaintiff's claims should be dismissed because Plaintiff has not plausibly pled a claim for race based discrimination, hostile work environment, or retaliation. Def. Memo at 21-34. This Court will address each of these arguments in turn.

### 1. **Race-Based Discrimination / Disparate Treatment**
### a. *Materially Adverse Change*

Under Title VII and NYSHRL, "[a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions

17

of employment." Bermudez v. City of New York, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011) (internal quotation marks omitted). The materially adverse change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. (quoting other sources). Examples of such change include "termination of employment, a demotion evidenced by a decrease in wage or salary, *a less distinguished title*, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." Id. (quoting other sources and emphasis added). Under NYCHRL, there is a more liberal pleading standard under which Plaintiff need not identify a "materially adverse employment action [ ]." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 114 (2d Cir. 2013).

Defendants allege that "[m]ost of the allegations in the Complaint do not rise to the level of an adverse employment action as a matter of law." Def. Memo at 22. Plaintiff counters that his adverse employment actions include (i) denials of the central co-dean positions for the 2021-22 and 2022-23 school years resulting in his effective demotion from dean to teacher, (ii) denial of the logistics dean position for the 2021-22 school year, (iii) assignment as SAVE room teacher with no teaching assignment until November 8, 2021, and (iv) the Disciplinary Letter. Opp. at 19-20. Defendants reply that Plaintiff added new facts in his opposition about the positions that the Court should disregard as they are not pleaded in the Complaint. Reply at 8.

In this Court's view, it cannot say that the Complaint does not plausibly plead an adverse employment action, and this Court need not rely on the additional facts cited in Plaintiff's opposition to reach this conclusion. Plaintiff's Complaint clearly alleges he was a full time dean during the 2020-21 school year, Compl. ¶ 4, subsequently he was denied a dean position for the 2021-22 school year, Compl. ¶ 19, and alleges he was "demoted" to "[SAVE] room teacher" with no teaching assignment until November 8, 2021. Compl. ¶¶ 19-20. The "less distinguished title" is sufficient to plead a plausible materially adverse change in employment. Bermudez, 783 F. Supp. 2d at 576; See, e.g., Williams v. All. Nat. Inc., 24 F. App'x 50, 53 (2d Cir. 2001) ("A plaintiff can show an adverse employment action where, even though she was transferred to a job with the same rank and pay, the new position was arguably less prestigious or entailed diminished responsibilities").

The Court does agree with Defendants that the Disciplinary Letter did not constitute an adverse employment action. "Negative evaluations or reviews, without accompanying tangible harm or consequences, do not constitute materially adverse action altering the conditions of employment." Mabry v. Neighborhood Def. Serv., 769 F. Supp. 2d 381, 393 (S.D.N.Y. 2011). The Disciplinary Letter came months after the denial of the dean position and no alterations in the conditions of Plaintiff's employment were made after the letter was filed. Similarly, the Court agrees that the alleged "reprimands" for leaving a meeting early and a student using a cell phone in class do not constitute adverse employment actions. These events also occurred

19

after the denial of the dean positions, and there was no subsequent tangible harm or consequences.

### b.    *Discriminatory Animus*

Defendants argue that Plaintiff has not shown any adverse changes were motivated by discriminatory animus, particularly the denial of the dean positions. Def. Memo at 25-26.  Alternatively, Defendants argue that the Complaint shows non-discriminatory reasons why Plaintiff was not offered a dean position and Plaintiff has not shown that the candidates selected for dean were less qualified.  Id. at 26. Defendants point to language where Plaintiff says "[he] believe[s] [Koza] demoted [him] and did not select [him] for the Dean's position in retaliation for [his] objecting to being called racist regarding the incident with the paraprofessionals."  Compl. ¶ 14.

On balance, the Court is persuaded that Plaintiff has met his burden of raising a plausible inference of discrimination.  Ignoring the conclusory remarks, Plaintiff's Complaint alleges that he was previously a full time dean who met the qualifications for the central co-dean positions, and had more seniority than the candidates who were subsequently selected for dean positions.  Compl. ¶¶ 4,19.  In his opposition papers, Plaintiff notes he had two years of seniority over a candidate who was selected for a central co-dean position, and while Plaintiff had been a full-time dean for two prior school years, neither candidate selected had full-time experience as a dean. Opp. at 23.  Additionally, Plaintiff alleges that the demotion from dean to teacher stripped him of "administrative responsibilities and affected [his] wages[.]" Id. at 19-

20.    Defendants argue that the Court should ignore "new facts" raised in the opposition for the purposes of this motion, Reply at 10, but as Plaintiff is *pro se* it is appropriate to consider factual allegations that he raises in his opposition. <u>Walker v. Schult</u>, 717 F.3d 119, 122 n. 1 (2d Cir. 2013).

Unlike in the cases cited by Defendants where the plaintiffs did not adequately plead that the candidates who got the positions were less qualified, here, Plaintiff does at least allege that he had more seniority than the candidates who were chosen, Compl. ¶ 14.  Plaintiff cites to <u>DeLaRosa v. New York City Dep't of Educ.</u>, No. 21-CV-4051 (JPO), 2022 WL 2752589, at *4 (S.D.N.Y. July 14, 2022), where the Court found that a plaintiff assistant principal stated a disparate treatment claim for age discrimination by alleging that younger assistant principals were given her responsibilities.  In <u>DeLaRosa</u>, the plaintiff contended that she used to be involved in a summer program that was reassigned to two younger assistant principals.  <u>Id.</u> at *4.  The Court reasoned that the plaintiff made out a claim for disparate treatment because the younger principals were given summer work, but the plaintiff was denied summer work which affected her compensation.  <u>Id.</u>

Similarly, in the instant action, Plaintiff alleges the dean positions went to applicants outside of his racial group with less experience than him, and as a result he was "demoted" from his full-time dean position.  Compl. ¶ 14.  While the allegations in the Complaint do not mention lost compensation, Plaintiff's opposition papers note that he was stripped of administrative responsibilities that affected his wages.  Opp. at 19-20.  In this Court's view, that is consistent with his

characterization of being "demoted" and sufficient to clear the low *prima facie* bar. See Littlejohn, 795 F.3d at 313 ("The fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the initial *prima facie* stage of the ... analysis, including at the pleading stage.").

This Court cannot say that Plaintiff has not plausibly pled a case for disparate treatment. In this Court's view, this is sufficient to satisfy the diminished *prima facie* pleading requirement at the motion to dismiss stage where the complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002).

Therefore, this Court recommends that Defendants' Motion to dismiss for failure to state a plausible claim for disparate treatment under Title VII, NYSHRL, and NYCHRL be DENIED.

Assuming *arguendo* that the District Judge disagrees that the Complaint states a plausible claim of discrimination, this Court recommends that Plaintiff be allowed to amend his complaint to include additional details in support of his allegations. "Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citing Matima v. Celli, 228 F.3d 68, 81 (2d Cir.2000)).

**2. Hostile Work Environment**

Defendants allege that Plaintiff has failed to plead a hostile work environment under Title VII, NYSHRL, or NYCHRL. Def. Memo at 28-30. Plaintiff disagrees. Opp. at 26-28.

The Court looks to the totality of the circumstances in determining whether a hostile work environment exists under Title VII including: the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating, whether the conduct unreasonably interfered with plaintiff's work performance, and the effect on plaintiff's psychological wellbeing. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Under federal law, a plaintiff must show that the conduct was sufficiently severe and pervasive, rather than "[m]erely offensive, unprofessional, or childish conduct." Payton v. City Univ. Of New York, 453 F. Supp. 2d 775, 785 (S.D.N.Y. 2006) (internal citations omitted). The Second Circuit has "noted that even a single episode of harassment can establish a hostile work environment if the incident is sufficiently 'severe,'" Redd v. N.Y. Div. of Parole, 678 F.3d 166, 176 (2d Cir.2012) (citing cases), however, in most cases, "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive," Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir.2014) (citation omitted).

"[T]o avoid dismissal under [Fed. R. Civ. P.] 12(b) (6), a plaintiff need only plead facts sufficient to support the conclusion that [he] was faced with 'harassment ... of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse.'" Patane v. Clark, 508 F.3d 106, 113 (2d Cir.2007)

23

(quoting Ashcroft, 336 F.3d at 148). Critically, a plaintiff must also show they were subjected to hostility because of their membership in a protected class. Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999). Whereas disparate treatment claims typically focus on discrete harms—such as hiring or termination—a hostile work environment claim requires analysis of the "workplace environment as a whole." Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir.2001); see also Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (determining hostile work environment requires an examination of the totality of the circumstances).

Under NYSHRL, Plaintiff must show that he "was subjected to inferior terms, conditions, or privileges of employment because of [his] membership in one or more protected categories." Tortorici v. Bus-Tev, LLC, No. 17-CV-7507(PAC)(KHP), 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14, 2021). The NYCHRL has a more liberal standard where "Plaintiff need only demonstrate that he was treated 'less well' than other employees because of his protected characteristic." Id. The Court has found that "[t]he standards for discrimination and hostile work environment are the same" under NYCHRL. Raji v. Societe Generale Ams. Sec. LLC, No. 15 Civ. 1144 (AT) (JLC), 2018 WL 1363760, at *7 (S.D.N.Y. Feb. 28, 2018). However, the Circuit has recognized that while "[u]nder either theory (disparate treatment or hostile work environment), a plaintiff must prove that she was singled out for mistreatment because of her [protected characteristic . . . ] the two theories differ in pleading and in proof." Alfano v. Costello, 294 F.3d 365, 375 (2d Cir. 2002).

24

In support of the claim for hostile work environment, Plaintiff alleges (i) he was denied the central co-dean position twice and the position was given to "Black individuals who were less qualified and had less seniority[,]" (ii) other staff "did not support" Plaintiff and "treated [him] unprofessionally" "undermining [his] authority in front of the students[,]" (iii) "the administration did not address racially charged comments made against [him,]" (iv) he was assigned to the "SAVE" room with no teaching assignment until November 8, 2021, (v) he received a Disciplinary Letter and "unfair reprimands threatening [his] termination[,]" and (vi) he received poor evaluations and feedback which "did not reflect [his] actual performance." Opp. at 28. Finally, Plaintiff claims that because of stress related to the alleged discrimination he took leave from February 2, 2022 to June 17, 2022.  Compl. ¶ 37.

Defendants counter that three alleged comments with respect to race over the 2020-21 and 2021-22 school years, one negative evaluation, and Plaintiff's subjective beliefs that he was being disrespected or not supported because of his race cumulatively are neither severe nor pervasive enough to plausibly allege a hostile work environment.  Reply at 12.

On balance, Plaintiff has not plausibly pled a claim of hostile work environment.  While the Court found that Plaintiff met the low burden of alleging an adverse employment action supported by an inference of discriminatory intent to satisfy the elements of a possible disparate treatment claim by alleging that the co-dean positions went to candidates outside of Plaintiff's racial group with less experience than he had, see supra Part D(1), this Court is not convinced that even at

the lowest NYCHRL threshold Plaintiff has adequately alleged that he was treated less well because of his race. Plaintiff points to no factual allegations before or during the denial of the central co-dean and logistic dean positions to reasonably support his position that he was treated less well because of his race. Additionally, the DeLaRosa case that Plaintiff relies on illustrates that his hostile work environment claims must fail.

In DeLaRosa, the Court noted that even if there were age-related comments made to the plaintiff assistant principal, the complaint did not draw a direct link between "any discriminatory stereotypes and an adverse employment decision[,]" so the hostile work environment claims under federal law, NYSHRL, and NYCHRL were dismissed. Id. Similarly, here, Plaintiff has not drawn a link between any comments made by Defendant Koza and any "discriminatory stereotypes" nor any adverse employment decision. Plaintiff does not allege that any of the comments were made in the context of an adverse employment decision, nor that Plaintiff was treated less well in the context of any alleged comments made about him.

Accepting Plaintiff's claims as true, Plaintiff has not pled a single event sufficient to sustain a claim of hostile work environment, nor can a hostile work environment be inferred from the totality of the circumstances. Plaintiff fails to connect most of the incidents he complains of to any protected characteristics, and the racial incidents that Plaintiff identifies are not sufficiently severe or pervasive to plausibly support his claim. Additionally, Plaintiff has not plausibly pled that he was

26

Case 1:22-cv-07741-VEC-JW    Document 27    Filed 02/08/24    Page 27 of 33

"subjected to inferior terms, conditions, or privileges of employment" or treated less well because of his race.

Plaintiff alleges that it was discriminatory that colleagues "did not support" him and treated him "unprofessionally." Compl. ¶¶ 5-7, 9, 12. However, much of the conduct Plaintiff complains of has nothing to do with race. Plaintiff argues that the administration did not address the "unprofessional remarks" Ms. Theodore made when saying that she wished Mr. Registe was the dean. Id. ¶ 5. This comment has nothing to do with Plaintiff's race, and his subjective beliefs are not sufficient to raise a specter of discriminatory intent. Further, even crediting Plaintiff's version of events, the conflict with Mr. Registe occurred because he thought Plaintiff snapped at him. Compl. ¶ 6. While Plaintiff may have felt "bullied" and "unsupported[,]" that too is insufficient to raise an inference of discrimination. See Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[A] plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn."). Plaintiff's subjective beliefs that his conflicts with his coworkers were racially motivated is not factually supported in the Complaint.

These incidents do not implicate a causal link between the conduct Plaintiff complains of and his race. Like in Anderson v. City of New York, Health & Hosp. Corp., these "naked assertions of discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss."

27

Anderson v. City of New York, Health & Hosp. Corp., No. 1:16-CV-01051(GBD)(KHP), 2017 WL 9538862, at *8 (S.D.N.Y. Jan. 19, 2017), report and recommendation adopted sub nom. Anderson v. City of New York, No. 16-CIV-1051(GBD)(KHP), 2017 WL 3251603 (S.D.N.Y. July 31, 2017) (quoting another source).  Even under the liberal standard of the NYCHRL, the law does not impose a general civility code and personality conflicts do not support claims of discrimination.  Davis-Bell v. Columbia Univ., 851 F. Supp. 2d 650, 678 (S.D.N.Y. 2012).

Here, the only allegations that Plaintiff raises plausibly connected to his race are (i) another teacher wrote that Plaintiff was a "white prison warden" "perpetuating the prison system and trying to control [] students by forcing them in the classroom [,]" Compl. ¶ 8, (ii) Defendant Koza said Plaintiff lacked "racial and cultural competencies," id. ¶ 31, (iii) Plaintiff was asked questions about race in an interview for a dean position which other applicants were not asked, id. ¶ 13, and (iv) Plaintiff says the school custodian told him that Defendant Koza said, "you do not want trouble with the [B]lack community."  Id. ¶ 22.  Individually, and collectively, these allegations do not rise to the level of a plausible hostile work environment claim under Title VII, NYSHRL, or NYCHRL.

The Court has articulated a four-factor test to determine whether comments are "stray remarks" such that they are not probative of an intent to discriminate: "(1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as

28

discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decision-making process." Schreiber v. Worldco, LLC, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004).

Here, the only "derogatory" remark made with respect to Plaintiff's race was by a non-decision making teacher with no connection to the dean selection process. Compl. ¶ 8. While Plaintiff claims Defendant Koza told him he lacked "racial and cultural competencies," the comment was made after the decision making process and had nothing to do with Plaintiff's racial group. Id. ¶ 31. The school is diverse and has students and staff from a variety of backgrounds. Id. ¶ 13. Competency with handling racial and cultural diversity is not unique to a particular racial group, nor does it exclude Plaintiff from qualification based on his race. Additionally, the comment that "you do not want trouble with the [B]lack community" was allegedly made to the school custodian and outside of the decision making process. Id. ¶ 22.

The only allegation that Plaintiff includes about racial language used during the decision making process is that Plaintiff was asked questions about race in the interview for the central co-dean positions. Id. ¶ 13. However, while Plaintiff claims another white applicant was asked similar questions about race, id. ¶ 24, the Complaint includes no factual support that the Black candidates who were selected for the position were not asked the same questions. See generally Compl. This is wholly insufficient, even under the liberal NYCHRL standard, to show that Plaintiff was treated "less well" because of any protected characteristics. Defendant Koza's comments simply do not remotely rise to the level of "intimidation, ridicule, or insult

relating to a protected characteristic." DeLaRosa v. New York City Dep't of Educ., 2022 WL 2752589 at *5.

Therefore, this Court recommends that Plaintiff's hostile work environment claims be dismissed and Defendants' Motion to dismiss with respect to the hostile work environment claims pursuant to Title VII, NYSHRL, and NYCHRL be GRANTED.

### 3. Retaliation

To survive a motion to dismiss on the Title VII retaliation claim, a plaintiff must plausibly plead "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 844 (2d Cir. 2013). "A plaintiff engages in protected activity when [the individual] (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." Ramirez v. Michael Cetta Inc., No. 19-CV-00986, 2020 WL 5819551, at *19 (S.D.N.Y. Sept. 30, 2020). Under NYCHRL, a plaintiff must demonstrate that they took an action opposing the employer's discrimination and "the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action[.]" Mihalik, 715 F.3d at 112. In 2019, NYSHRL was amended such that the "standard for claims [is] closer to the standard under the NYCHRL." Wellner v. Montefiore Med. Ctr., No. 17 CIV. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019).

30

Plaintiff alleges he filed a complaint with UFT on June 25, 2021 regarding "Principal Koza's discriminatory behavior" and on July 21, 2021, Defendant Koza informed him that he would not have a full-time dean position because she did not get budget approval. Compl. ¶¶ 18-19. Plaintiff further states that he filed a NYSDHR complaint on October 27, 2021, and received a Disciplinary Letter on November 3, 2021. Id. ¶¶ 25-26. Defendants counter that Plaintiff was denied the central co-dean positions before the UFT complaint, and the Disciplinary Letter was based on conduct that occurred before the NYSDHR charges, so Plaintiff's retaliation claims fail. Reply at 13-14.

In this Court's view, the charges of discrimination filed with the UFT and NYSDHR are clearly protected activities. Ramirez, 2020 WL 5819551, at *19. Next, Defendants knew of the charges of discrimination. See, e.g., Compl. ¶ 25. Additionally, this Court has already analyzed that Plaintiff plausibly pled that the denial of the full-time dean positions resulted in a demotion constituting a material adverse change in employment. See supra Part D(1)(a). Finally, the close temporal proximity between the UFT complaint and the denial of the full-time logistics dean position is sufficient to plausibly plead a causal connection of retaliation. See De Figueroa v. New York, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) ("'very close' temporal proximity alone is enough to . . . overcome Defendants' motion to dismiss" and "most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference."). Here, the one month time span between the protected activity and alleged adverse employment action is sufficient to

31

withstand a motion to dismiss.  Whether there were legitimate non-discriminatory and non-retaliatory reasons for Plaintiff's denial of the dean positions is a matter for summary judgment rather than on a motion to dismiss.  Robinson v. Gucci Am., No. 11-CV-3742 (JPO), 2012 WL 259409, at *6 (S.D.N.Y. Jan. 27, 2012).

Therefore, this Court recommends that Defendants' motion to dismiss the retaliation claims be DENIED.

## RECOMMENDATION

For the foregoing reasons, this Court recommends that Defendants' Motion to dismiss be **GRANTED** in part and **DENIED** in part as follows:

- Defendants' Motion to dismiss the NYSHRL and NYCHRL claims based on alleged N.Y. Educ. Law § 3813 violations be DENIED;

- Defendants' Motion to dismiss the Title VII claims against Defendant Koza be GRANTED;

- Defendants' Motion to dismiss for failure to plausibly plead a claim under Title VII, NYSHRL, and NYCHRL be DENIED;

- Defendants' Motion to dismiss for failure to plausibly plead a claim of hostile work environment under Title VII, NYSHRL, and NYCHRL be GRANTED; and

- Defendants' Motion to dismiss for failure to plausibly plead a claim of retaliation under Title VII, NYSHRL, and NYCHRL be DENIED.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections shall be filed with the Clerk of Court and on ECF.  Any requests for an extension of time for filing objections must be directed to Judge Caproni.  **Failure to file objections within fourteen days will result in a waiver of objections and will preclude appellate review**.  See Thomas v. Arn, 474 U.S. 140 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

SO ORDERED.

DATED:      New York, New York
            February 8, 2024

                                        _____
                                        JENNIFER E. WILLIS
                                        United States Magistrate Judge